IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| QUKULKHAN SHAHBAZ NAGAQIXI AMARU, *et al.*, | § § § | |
| Plaintiffs, | § § | Civil Action No. 4:22-cv-01090-O-BP |
| v. | § § | |
| RHOME POLICE DEPARTMENT, *et al.*, | § § § | (Consolidated with Civil Action No. 4:22-cv-01096-P-BJ) |
| Defendants. | § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Amended Complaint that Plaintiffs Qukulkhan Amaru ("Mr. Amaru") and Mulukah Amaru ("Ms. Amaru") filed on September 11, 2024 (ECF No. 129); the Motions to Dismiss and supporting Briefs of Defendants Marissa Martinez ("Martinez"), Mark Moore ("Moore"), Eric Debus ("Debus"), and the City of Rhome ("the City") (ECF Nos. 130-31; 132-33; 134-35; and 136-37, respectively); the Responses that Plaintiffs filed (ECF Nos. 139-42); and the Replies filed by the City (ECF No. 143), Debus (ECF No. 144), and Moore (ECF No. 145). After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** the Defendants' Motions to Dismiss (ECF Nos. 130, 132, 134, and 136) and **DISMISS** Plaintiffs' claims without leave to amend.

**I.     BACKGROUND**

   **A.     Facts**

As previously detailed in the Findings, Conclusions, and Recommendation entered on August 1, 2024 ("the First FCR"), this case arises from a traffic stop in Rhome, Texas on April

29, 2022. ECF No. 123. Mr. Amaru was the driver, and Ms. Amaru was his passenger. ECF No. 129 at 1. Rhome Police Officer Moore pulled the Amaru vehicle over. *Id*. at 2. A video the Plaintiffs submitted on a USB drive shows the stop in detail. *See* ECF No. 4 (hereinafter "the Video"). Moore told the Plaintiffs that he stopped their car because Mr. Amaru had been driving in the left lane too long. ECF No. 129 at 2. According to Plaintiffs, Moore began asking them "harassing" questions, such as whether there were drugs or a dead body in the car. *Id*.

Moore asked to search the car, and Plaintiffs refused. *Id*. He called for backup, and after Officer Martinez arrived with a narcotics dog, the dog sniffed the car, and officers searched it. *See id*. 2-3. Plaintiffs allege the search was conducted "without warrant or probable cause." *Id*.

Mr. Amaru alleges that Moore "kidnapped" him in the backseat of his police car and turned the air conditioner on, though he had told Moore not to do so. *Id*. at 3. This resulted in Mr. Amaru "freezing" in the back of the car. *Id*.

Ms. Amaru alleges that "… Moore falsely arrested and Trooper Womack handcuffed [her] from behind under duress without a warrant or being lawful and without a crime, offense or disturbance of the peace." *Id.* at 2. She claims that Trooper Womack illegally searched her bag without probable cause and by using excessive force, though she does not describe the nature of this force. *Id.* In their responses to the Court's questionnaires, Plaintiffs did not list Trooper Womack as a defendant when the Court asked for the names of all defendants from whom the Plaintiffs sought damages. ECF No. 14 at 57; ECF No. 15 at 57. Nor did Plaintiffs identify him as a defendant in their Amended Complaint. ECF No. 129. Trooper Womack is therefore not a defendant in this case.

Ms. Amaru also alleges that one or more defendants unlawfully detained her, causing "mental anguish and embarrassment." *Id.* at 2. She alleges that her children saw her get pulled

over and detained, which made them "fear and worry." *Id*. Moore refused to allow Ms. Amaru to use the restroom, and she explains that he assumed that she "was hiding drugs without any reasonable suspicion or probable cause." *Id*. She asserts that "Defendants performed an illegal stop and frisk on [Ms. Amaru] without objectively reasonable suspicion and this caused mental anguish and embarrassment." *Id*.

Ultimately, Moore issued a written warning to the Plaintiffs (ECF No. 139 at 9-10) and let them go. Video at 6:20-7:20. Although the Video does not indicate the exact duration of the stop, the excerpts the Plaintiffs provided suggest that it lasted roughly an hour. *See generally* Video.

### B. Claims and Responses

Plaintiffs assert eight causes of action against Defendants in their Amended Complaint. ECF No. 129 at 3-6. They claim false imprisonment, police harassment, illegal search and seizure under the 4th Amendment to the Constitution, intimidation, racial profiling, battery, unlawful restraint, and the results of an unconstitutionally vague citation for driving too long in the left lane of traffic. *Id.* They pray for $12 million in actual damages, punitive damages, pain and suffering damages, costs, and general relief. *Id.* at 7.

In the pending Motions, Defendants seek dismissal of Plaintiffs' claims because the Court previously dismissed the same claims that the Plaintiffs now pursue, and Plaintiffs did not amend their complaint to address the legal deficiencies noted in the First FCR. *See* ECF Nos. 131, 133, 135, and 137. The City, Debus, and Moore also object to Plaintiffs' addition of factual assertions in their Responses to Defendants' Motions that exceed the facts pleaded in the Amended Complaint. *See* ECF Nos. 143 at 4-5, 144 at 3-5, and 145 at 3-4, 7-8.

## II. LEGAL AUTHORITIES

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a viable claim for relief, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff ... and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). "[T]he immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)). Qualified immunity can be decided at the motion to dismiss stage as it is the earliest possible stage in litigation. *Carswell v. Camp*, 37 F.4th 1062, 1068 (5th Cir. 2022).

To overcome the defense of qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the

time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citations omitted). A good-faith assertion of qualified immunity alters the usual burden of proof, shifting it to the plaintiff to show that the defense is not available. *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 287 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 376 (2020).

### C. *Pro Se* Plaintiffs

A *pro se* plaintiff's pleadings are liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106, (1976). A *pro se* complaint, "'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers....'" *Id*. (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). If the district court determines that a plaintiff has pleaded his or her best case, however, the court does not err in dismissing a *pro se* complaint with prejudice. *Jones v. Greninger*, 188 F.3d 322, 326-27 (5th Cir. 1999) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)).

### D. Claims Raised Solely in a Response

Parties cannot inject new claims and defenses in response to a motion. *See Cutrera v. Bd. of Sup'rs of La. St. Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."); *Middleton v. Life Ins. Co. of N. Am.*, H-09-cv-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (same for claim first asserted in response to motion to dismiss). In the interest of justice, a court may treat claims and defenses newly raised in a response as a motion for leave to amend pleadings. *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992).

### E. Dismissal With or Without Leave to Amend

There is a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of*

*Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and the Fifth Circuit thus recommends that suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings, "unless it is clear that the defects are incurable." *Id*. An incurable defect may arise when a complaint's facts are "not actionable as a matter of law." *Taubenfeld v. Hotels.com,* 385 F. Supp. 2d 587, 592 (N.D. Tex. 2004). In such situations, amendment would be futile, and dismissal with prejudice is appropriate. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). Courts may also appropriately dismiss an action with prejudice if the court finds that the plaintiff has alleged his best case. *Greninger*, 188 F.3d at 327.

### III. ANALYSIS

The First FCR recommended dismissal of Plaintiffs' constitutional challenges, claims based on criminal law, and claims asserted on behalf of their minor children and dismissal of their remaining claims with leave to amend the complaint to address the legal deficiencies noted in the First FCR. ECF No. 123. Judge O'Connor accepted the First FCR. ECF No. 128. Plaintiffs filed their Amended Complaint thereafter. Although the Court may consider additional factual claims first asserted in a response to a motion to dismiss in the interest of justice, *see Cash*, 978 F.2d at 218, the Court should decline to do so here where the Plaintiffs had ample opportunity to amend their complaint to cure the legal deficiencies addressed in the First FCR but did not do so. *See Greninger*, 188 F.3d at 326-27.

### A.     The Court should dismiss Plaintiffs' claims against Debus and the City.

For the reasons previously stated in the First FCR, the Court should dismiss Plaintiffs' claims against Debus and the City. The Plaintiffs do not state any facts to show that Debus was personally involved in the traffic stop or was present at the scene. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). To the extent Plaintiffs first asserted additional facts against Debus in their Response to his Motion to Dismiss, they are not properly before the Court for the reasons discussed above. And even if they were properly raised, they merely restate supervisory liability that the law does not recognize. There is no *respondeat superior* liability under 42 U.S.C. § 1983, and Plaintiffs' other claims against officers under Debus' command are unavailing. Under these circumstances, there is nothing to hold Debus responsible for in the instant case. *See Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (listing "the violation of the plaintiff's rights" as part of an element of supervisory liability for failure to supervise or train under § 1983); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) (rejecting *respondeat superior* liability under 42 U.S.C. § 1983).

Likewise, the Court should dismiss Plaintiffs' claims against the City. As stated in the First FCR, to plead municipal liability under § 1983, Plaintiffs must allege that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *see also Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Plaintiffs have not pleaded facts to support a claim for municipal liability against the City.

They have not stated facts to meet the requisite legal standards. Specifically, even if Debus were an official policymaker and his alleged failure to train were an official policy, Plaintiffs have not plausibly pleaded facts showing that any such failure was the moving force behind a constitutional violation, because they have not plausibly pleaded a violation of their constitutional rights. *Peterson*, 588 F.3d at 847. Similarly, they plead no facts showing that any of the individual defendants' actions resulted from a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). Plaintiffs' belated statements in response to the City's Motion that "[it] is also responsible for officials in their jurisdiction" are not properly before the Court and do not state a municipal liability claim against the City in any event. *See* ECF No. 141 at 11, ¶¶53 and 57; 12, ¶¶62 and 66; 14, ¶¶75 and 77; 15, ¶79; 17, ¶90; and 18, ¶99.  Therefore, Plaintiffs have not alleged facts to support a plausible constitutional claim against Debus and the City, and the Court should dismiss these claims.

      **B.**      **The Court should dismiss Plaintiffs' claims against Martinez.**

In the First FCR, the undersigned concluded that the Court should dismiss Plaintiffs' claims against Martinez because Plaintiffs had not pleaded facts to show that she had violated their constitutional rights. *See* ECF No. 123 at 21, 23, 25-27. In the Amended Complaint, Plaintiffs have not pleaded additional facts to support a claim against Martinez. They assert only two factual allegations against Martinez: "Defendant called for backup with K-9 dog M. Martinez without a warrant or probable cause" and "Defendant calls for backup with K-9 dog M. Martinez without warrant or probable cause to search Plaintiff's car while Plaintiff was falsely imprisoned

violating Plaintiff's rights." ECF No. 129 at 2, ¶13 and 3, ¶22. Plaintiffs offer no facts to support their conclusory claims that Martinez violated their constitutional rights.

For the same reasons stated in the First FCR, the Court should dismiss Plaintiffs' claims against Martinez. Further, even if Plaintiffs had asserted facts to show a violation of their constitutional rights, they have not overcome Martinez's claim to qualified immunity. They have offered no facts to show that a reasonable police officer in Martinez's position would have known that any action that she took or failed to take violated the established constitutional rights of either Plaintiff. Therefore, she would be entitled to qualified immunity under those circumstances. *Gibson*, 44 F.3d at 277.

### C. The Court should dismiss Plaintiffs' claims against Moore.

#### 1. Plaintiffs' Fourth Amendment claims do not state a claim upon which relief can be granted.

Courts "analyze the constitutionality of a traffic stop under the two-step test from *Terry v. Ohio*, 392 U.S. 1 (1968)." *United States v. Daniel*, No. 23-30491, 2024 WL 1929013, at *3 (5th Cir. May 2, 2024); U.S. Const. amend. IV; *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013) (Fourth Amendment guarantees "extend[ ] to vehicle stops and temporary detainment of a vehicle's occupants.").

Under *Terry*, courts first determine "whether the stop was justified at its inception." *Daniel,* 2024 WL 1929013, at *3. "For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). Second, courts address whether the officer's subsequent actions were "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. However, "[i]f the officer develops

reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain its occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010).

Brief traffic stops require neither a warrant nor probable cause. *See Terry*, 392 U.S. at 20. However, such a stop does require "reasonable suspicion." *Lopez-Moreno*, 420 F.3d at 430. "[S]uspicion is reasonable if it is based on specific and articulable facts and the rational inferences that can be drawn therefrom." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). "Although a mere 'hunch' does not create reasonable suspicion[ ] ... the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014) (internal quotation marks and citations omitted).

Determining whether an officer had reasonable suspicion requires courts to "examine ... the totality of the circumstances known to the [officer] when [he] made the investigatory stop and [his] experience in evaluating such circumstances." *Guerrero-Barajas*, 240 F.3d at 433. "We give due weight to the officer's factual inferences because officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *United States v. Smith*, 952 F.3d 642, 648 (5th Cir. 2020) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal citations and quotations in *Arvizu* omitted)).

For the same reasons discussed in the First FCR, the undersigned determines that Moore had reasonable suspicion to pull the Plaintiffs over for violating Texas Transportation Code § 544.011 (Lane Use Signs), and his subsequent actions during the traffic stop were reasonably

related in scope to the circumstances supporting the initial stop, or whether reasonable suspicion separately supported them. *See Terry*, 392 U.S. at 20; *Pack*, 612 F.3d at 350. Although the Plaintiffs have made numerous conclusory allegations regarding the search of their vehicle, some of which are not properly before the Court due to being first asserted in their response to Moore's Motion to Dismiss, these statements do not state facts to show that Moore lacked a reasonable suspicion sufficient to justify stopping Plaintiffs' car.

Furthermore, even if Moore had violated Mr. or Ms. Amaru's Fourth Amendment rights in pulling them over, he would be entitled to qualified immunity. Although the facts Plaintiffs pleaded "support a reasonable inference" that Mr. Amaru did not drive past a "left lane for passing only" sign before being pulled over, Moore still would not be liable to Plaintiffs due to qualified immunity. ECF No. 139 at 17-18; *United States v. Rodriguez*, 802 F. App'x 90, 94 (5th Cir. 2020).

For the purposes of qualified immunity, it is clearly established that a lawful traffic stop requires reasonable suspicion of a legal violation. *See, e.g.*, *Terry*, 392 U.S. at 20; *Lopez-Moreno*, 420 F.3d at 430. However, it is unclear whether a motorist must drive past a sign warning that the left lane was for passing only to establish reasonable suspicion of a violation of Texas Transportation Code §§ 544.011 and 544.004. One reasonable officer could believe that the best interpretation of *Rodriguez*, *Castillo,* and the text of the Texas Transportation Code is that notice of the sign is required. But another could interpret *Rodriguez* to mean that *Castillo* is overruled and that an officer need not demonstrate that a motorist had notice of the sign. *See also United States v. Castillo*, 804 F.3d 361, 365 (5th Cir. 2015) ("For a driver in the left lane to violate the sign-compliance provision, he must have notice, i.e., there must be a sign 'within a reasonable distance of the traffic stop.'"); Texas Transportation Code § 544.004 ("A provision of this subtitle requiring an official traffic-control device may not be enforced against an alleged

violator if at the time and place of the alleged violation the device is not in proper position and sufficiently legible."). Because the law was not settled so that every reasonable officer facing this situation would know that notice of the sign was required, qualified immunity would shield Moore from liability even if he lacked reasonable suspicion when he pulled the Plaintiffs over for driving in the left lane too long. *District of Columbia v. Wesby*, 583 U.S. 48, 63-64 (2018).

### 2. Moore's post-stop conduct was not actionable.

According to Plaintiffs, after pulling them over, Moore began asking them "harassing" questions about the presence of drugs or a dead body in their car. ECF No. 129 at 2-3. However, "an officer may ask questions on subjects unrelated to the circumstances that caused the stop, so long as these unrelated questions do not extend the duration of the stop." *Pack*, 612 F.3d at 350. "[N]o Fourth Amendment harm is done where the officer asks the occupant of a vehicle questions that are unrelated to his reason for stopping the vehicle while waiting for routine computer checks to be processed." *Id*.

Plaintiffs do not state how long Moore questioned them on unrelated topics before beginning the criminal background check, nor do they more generally allege that this questioning prolonged the stop. Their concerns appear to be with the content, rather than with the length, of the questioning. ECF No. 129 at 2. Accordingly, Plaintiffs have not raised a right to relief "above the speculative level" that Moore's unrelated questioning impermissibly extended the traffic stop in violation of their Fourth Amendment rights. *Twombly*, 550 U.S. at 555. Under *Terry*'s second step, Moore's subsequent actions during the traffic stop were reasonably related in scope to the circumstances supporting the initial stop (or justified by reasonable suspicion gained during the initial stop). *See Terry*, 392 U.S. at 20; *Pack*, 612 F.3d at 350.

### 3. Moore's searches of Plaintiffs' property were lawful.

#### a. Moore had reasonable suspicion to extend the traffic stop to have a narcotics dog sniff Plaintiffs' vehicle.

In *Rodriguez v. United States*, the Supreme Court addressed "whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." 575 U.S. 348, 353 (2015). The Court explained that "[a]n officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id*. at 355; *see also Weisshaus v. Teichelman*, No. 22-11099, 2024 WL 620372, at *5 (5th Cir., Feb. 14, 2024) (under *Rodriguez*, dog-sniff beyond the duration of the initial traffic stop required reasonable suspicion).

The Court also explained that an officer's mission includes "ordinary inquiries incident to" the traffic stop, which typically involve "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 575 U.S. at 355. "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id*. But "[a] dog sniff, by contrast, is a measure aimed at detecting evidence of ordinary criminal wrongdoing." *Id*. (internal citations and quotations omitted). "Lacking the same close connection to roadway safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission." *Id*. at 356. Accordingly, the "critical question" is whether the dog sniff prolongs the stop. *Id*. at 357. If so, the sniff requires reasonable suspicion. *Id.* at 355.

Construing the facts in Plaintiffs' favor as required at the motion to dismiss stage, the Court finds that the traffic-related portion of the stop had already been completed by the time the

dog sniff occurred. Thus, the question becomes whether Moore had reasonable suspicion to prolong the stop to have the narcotics dog sniff Plaintiffs' car.

The Video provides evidence of why Moore had reasonable suspicion to order a dog sniff. In the Video, Moore explains that Ms. Amaru told him she had no criminal record, but that his dispatcher said she did. Video at 5:25-5:35. "Because making a material, false statement during the investigation of a traffic stop is itself a crime under Texas law, it is hard to argue that an officer would not have reasonable suspicion of criminal activity when confronted with a statement reasonably viewed as false and material to his investigation…." *Pack*, 612 F.3d at 360. Plaintiffs have not pleaded facts to show that Moore lacked reasonable suspicion to order a canine examination of their car. Accordingly, Moore had reasonable suspicion to prolong the traffic stop to conduct an open-air dog sniff.

### b. The dog's alert following the sniff provided probable cause to search the vehicle.

Moore states that the narcotics dog alerted on the vehicle (ECF No. 133 at 8), and the Video supports this conclusion. Mr. Amaru spoke back and forth with Moore about whether the dog alerted. Video at 5:44-6:10. Mr. Amaru said that "when the dog came around and sniffed, she said it was clear." *Id.* Moore stated that the dog handler told him the dog had alerted and that "if that dog didn't alert and [Martinez, the dog handler] saw me searching, just being a misunderstanding, she would have told me." *Id*.

In *Sullivan v. Garza Cnty. Sheriff's Office*, the Court recently addressed whether "there was probable cause to search [the *Sullivan* plaintiffs'] vehicle despite [their] assertion that [the drug-sniffing dog] did not alert." 5:23-cv-049-H-BQ, 2023 WL 9219306, at *10 (N.D. Tex. Nov. 3, 2023), *rec. adopted,* 2024 WL 133425 (N.D. Tex. Jan. 11, 2024). The plaintiffs in *Sullivan* contended that an officer lied that the dog had alerted, thus fabricating evidence. *Id*. at *12. After

14

describing the *Sullivan* plaintiffs' account as "contradictory," the Court in *Sullivan* concluded that "Plaintiffs' mere belief, however, that [the dog] did not alert does not establish a constitutional violation under the Fourth Amendment." *Id*. at *14. The same reasoning applies here: Plaintiffs' "mere belief" that the dog did not alert does not raise their right to relief on this point above a speculative level, particularly given Moore's explanation in the Video. *Id.*; Video at 5:44-6:10.

"When a dog's alert is the purported basis for probable cause, '[t]he question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime.'" *Daniel,* 2024 WL 1929013, at *5 (quoting *Florida v. Harris*, 568 U.S. 237, 248 (2013)). The Plaintiffs do not appear to argue that the narcotics dog that Martinez used was not certified or was otherwise unreliable. Applying the Court's conclusion in *Sullivan*, the Court concludes that Moore had probable cause to search the Plaintiffs' car.

    **c.** **The dog's alert following the sniff, coupled with Ms. Amaru's false statement to Moore, provided probable cause to seize Mr. and Ms. Amaru.**

Taken together, the dog's alert on the vehicle plus Ms. Amaru's false statement established probable cause to arrest her. *See, e.g.*, *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) ("[t]he Supreme Court has defined probable cause as the facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.") (internal citations and quotations omitted); *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (a warrantless arrest requires probable cause). Whether the detention of Mr. and Ms. Amaru was a stop or an arrest, such probable cause also would establish

the requisite reasonable suspicion for this form of seizure, as reasonable suspicion is a lower standard than probable cause. *United States v. Sokolow*, 490 U.S. 1, 2 (1989) (reasonable suspicion requires "some minimal level of objective justification for making a stop" but "less than the level of suspicion required for probable cause.").

Therefore, Moore did not violate the Fourth Amendment by detaining Mr. Amaru in the back of the patrol car or Ms. Amaru on the side of the road. The seizure was lawful based on a positive narcotics dog alert plus a materially false statement from someone in the car, establishing probable cause to arrest the Plaintiffs. *See United States v. Del Hierro-Vega*, 760 F. App'x 301, 305-06 (5th Cir. 2019) ("Del Hierro was found in the car with …, a suspected criminal for whom the agents had independent probable cause for an arrest . . . [and] agents had good reason to believe [the vehicle and its occupants were] still involved in a criminal conspiracy. There was probable cause for this lawful arrest.").

### d.     The search of Ms. Amaru's purse was constitutional.

The search of Ms. Amaru's handbag was constitutional regardless of whether it was inside or outside of the vehicle. "The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991). Based on the dog alert on the car, there was probable cause to search items within it where narcotics could be concealed, including Ms. Amaru's purse. Therefore, if her purse was inside the car at the time of the search, the search was constitutional.

If the purse was on Ms. Amaru's person during the search, and if her detention is better termed an arrest than a stop, this search could be considered a lawful search incident to arrest. "Incident to a lawful arrest, the police may search: the arrestee's person; any items or containers that were located on the arrestee's person at the time of the arrest; and any items or containers that were located within the arrestee's reaching distance at the time of the arrest." *United States*

16

*v. Curtis*, 635 F.3d 704, 711-12 (5th Cir. 2011); *see also Chimel v. California*, 395 U.S. 752, 762-63 (1969) (applies doctrine to both searches for weapons and for evidence). When searching areas within the arrestee's immediate control or areas immediately adjoining the place of arrest, "probable cause or reasonable suspicion is not necessary[.]" *United States v. Mata*, 517 F.3d 279, 285 (5th Cir. 2008). However, probable cause for the underlying arrest is necessary if the arrest is made without a warrant. *Henry v. United States*, 361 U.S. 98, 102 (1959). Additionally, "[a]mong the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Accordingly, because Ms. Amaru was lawfully arrested, if she had the purse on her person, the officers could have lawfully searched it without a warrant as a search incident to arrest.

### 4. Moore's other alleged misconduct was lawful.

#### a. The Court should dismiss Ms. Amaru's excessive force claims.

Plaintiffs claim that Trooper Womack "handcuffed Plaintiff from behind under duress without a warrant or lawful cause." ECF No. 129 at 2. They also allege that "Defendant used excessive force to perform an illegal search of Plaintiff's property." *Id.* However, Plaintiffs assert no facts that could support an excessive force claim against Moore, and any such claims against him should be dismissed. *See* ECF No. 123 at 27.

#### b. The Court should dismiss Plaintiffs' additional claims concerning the traffic stop.

In their Amended Complaint, Plaintiffs bring causes of action for false imprisonment, police harassment, illegal search and seizure, intimidation, and unlawful restraint, which the Court addressed in the First FCR's discussion of the Fourth Amendment claims. *See* ECF No. 123 at 13-26. Plaintiffs' "police harassment" cause of action is duplicative of their other causes of action. Plaintiffs have not pleaded additional facts in their Amended Complaint to show a

constitutional violation against Moore as to any of these claims, nor have they met their burden of showing that he would not have qualified immunity from these claims. *See* ECF No. 123 at 27-28. Therefore, the Court should dismiss these additional claims.

### c. Moore did not violate Plaintiffs' constitutional rights by not allowing one of them to use the restroom during the traffic stop.

Plaintiffs also allege in the Amended Complaint that Defendants did not allow Plaintiff to use the restroom during the traffic stop. ECF No. 129 at 2. As noted in the First FCR, Plaintiffs did not plead facts to show that this restriction constituted a violation of their constitutional rights. *See* ECF No. 123 at 29-31. Plaintiffs have pleaded no facts in support of this allegation. Accordingly, the Court should dismiss this claim.

### d. Plaintiffs have not stated a claim that Moore racially profiled them in violation of the Fourteenth Amendment's Equal Protection Clause.

Likewise, Plaintiffs have not asserted facts to support a claim against Moore of racial profiling in violation of the Fourteenth Amendment. For the same reasons stated in the First FCR's discussion of this claim, the Court should dismiss their claim. *See id.* at 31-32.

### e. The Court previously dismissed Plaintiffs' claims regarding the constitutionality of Texas Transportation Code § 544.011.

In the Amended Complaint, the Plaintiffs again attack the warning that they received because it was based on an allegedly unconstitutional statute. ECF No. 129 at 5. However, the Court denied their challenges to the constitutionality of the Texas Transportation Code sections at issue, including § 544.011 (Lane Use Signs). ECF No. 128 at 1. Accordingly, the Court should dismiss this claim.

### f.     The Court should dismiss Plaintiffs' battery claim.

In the Amended Complaint, Plaintiffs plead a claim for battery arising from being detained and placed in handcuffs. ECF No. 129 at 5. Because they did not plead any facts in support of the claim, it is unclear whether they assert that Moore battered them. For this reason alone, the Court should dismiss their claim. To the extent that the Court liberally construes their Amended Complaint as asserting a claim for battery against Moore, the Court still should dismiss the claim.

Battery is a common law claim arising in tort. Under Texas law, the elements of battery are "(1) a harmful or offensive contact (2) with a plaintiff's person." *Jackson v. Tex. S. Univ.*, 997 F. Supp. 2d 613, 632 (S.D. Tex. 2014). However, to the extent Moore contacted Mr. or Ms. Amaru's person in the process of arresting them, he would have been privileged to use reasonable force in his arrest. *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014). "The actions of a police officer in making an arrest necessarily involve a battery, although the conduct may not be actionable because of privilege." *Id.* Because Plaintiffs have not pleaded facts to show that Moore battered them or that he used more than reasonable force in touching them, the Court should dismiss their battery claim as to Moore, if they indeed claim that he battered them.

### D.     The Court should dismiss the Amended Complaint without leave to amend.

Plaintiffs already have amended their original complaints in response to the First FCR that noted numerous deficiencies in their pleadings. They also have had ample time to amend their complaint to respond to the extensive briefing that Defendants filed in support of their motions to dismiss Plaintiffs' original complaints and the Amended Complaint. It appears that they have pleaded their best case against the Defendants. Because any further amendment would not be likely to state a viable claim against the Defendants, any further amendment would be futile.

Under these circumstances, dismissal without leave to amend is proper. *Greninger*, 188 F.3d at 327.

## IV.    CONCLUSION

Because the Plaintiffs have failed to allege facts sufficient to state a claim for relief against Defendants, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the Defendants' Motions to Dismiss (ECF Nos. 130, 132, 134, and 136) and **DISMISS** Plaintiffs' claims without leave to amend.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on March 18, 2025.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE